# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.   RENNE A. CLARK, | ) | |
| | ) | |
|        Plaintiff, | ) | |
| v. | ) | CIV-16- 857-R |
| | ) | |
| 1.   COMMUNICATION FEDERAL CREDIT UNION, | ) ) | |
| | ) | ATTORNEY LIEN CLAIMED |
|        Defendant. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

**COMES NOW** the Plaintiff, Renne A. Clark, and for her Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1.  Plaintiff, Renne A. Clark, is an adult female who resides in Oklahoma County, Oklahoma.

2.  Defendant is Communication Federal Credit Union, an entity doing business in Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3.  This is a cause of action arising out of Plaintiff's former employment with Defendant and is based on claims of (a) racial discrimination, harassment and retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964; (b) gender discrimination, harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964; (c) age discrimination and retaliation in violation of the Age Discrimination in

1

Employment Act of 1967 ("ADEA"); (d) violation of the Equal Pay Act ("EPA"); and (e) Oklahoma state law *Burk* tort.

4. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claim as it arises out of the same core of operative facts as the federal claims, and jurisdiction over it is vested in this Court under 28 U.S.C. § 1367(a).

5. All of the actions complained of herein occurred in Oklahoma County, Oklahoma. Defendant are doing business in such county and may be served in said county. Oklahoma County is located in the Western District of Oklahoma. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6. Plaintiff has exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about October 30, 2015. Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated May 3, 2016 (received by Plaintiff by mail thereafter) and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

## STATEMENT OF FACTS

7. Plaintiff (a Black female born in 1965) was hired to work with Defendant on or about November 15, 2005 as an Assistant Collector. In or around early 2008, Plaintiff became the Collections Department Supervisor. Shortly thereafter, Senior Vice President of Lending Billy McDaniel (White male; believed to be in his 40s) became Plaintiff's

immediate supervisor.

8. Plaintiff's job performance throughout her employment was at least satisfactory, if not excellent.

9. Despite almost ten (10) years of excellent performance, Plaintiff was terminated on or about July 30, 2015. Plaintiff was told by McDaniel that she was "not working out" and management decided they did not need Plaintiff any longer. McDaniel further stated that Plaintiff's termination "was not personal" and that he did not have to elaborate any further regarding the reason for termination.

10. Following her termination, Plaintiff received a letter from McDaniel alleging that Plaintiff had been verbally counseled on numerous occasions and that she failed to meet expected leadership standards. However, this statement is false. In fact, prior to her termination, Plaintiff received no discipline from Defendant, verbal or otherwise. And, she received satisfactory or better performance reviews and pay increases annually which were approved by McDaniel.

11. Such proffered reason for termination was merely pretext for unlawful discrimination due to Plaintiff's race, gender and age. It was further in retaliation for Plaintiff's opposition to a hostile work environment based on race, gender and age, for her complaints that she and other female employees were not paid equally in comparison to their male counterparts, and Plaintiff's opposition to Defendant's unethical and unlawful banking/credit union practices which were contrary to Oklahoma public policy.

12. Particularly, throughout Plaintiff's employment, McDaniel exhibited his preferential treatment of male employees. For instance, Plaintiff was not paid as much as her male predecessor in the Collections Supervisor position. And, Plaintiff was paid close to or the same as male subordinate employees reporting to her. Plaintiff began questioning McDaniel regarding these pay discrepancies in or around 2009. McDaniel alleged that he could not give Plaintiff a 10-20% raise to match her salary with her male predecessor. Plaintiff told McDaniel that if she were a male outside candidate for the position she would have been paid more for the job. However, McDaniel did not raise her pay to be commensurate with her male counterparts at that time.

13. Further, McDaniel did not discipline male employees for creating a hostile work environment based on sex and race. For instance, in or around 2009, Plaintiff reported to McDaniel that Underwriter Richard Cervenka (White male reporting to McDaniel) sent an email to another employee referring to Plaintiff and other women in the department as "old ugly fat women" who were "bitter and take themselves way too seriously." The email further stated the Plaintiff and the other women were "dumb," "useless" and "small-minded." Despite this documented harassment based on age and gender, McDaniel did not discipline Cervenka.

14. In addition, McDaniel made statements during Plaintiff's employment which contributed to this hostile work environment. For instance, McDaniel asked Plaintiff several times throughout her employment whether she was dating and, if so, whom she was dating.

4

Plaintiff told McDaniel on several occasions that she preferred not to discuss her personal life at work. However, McDaniel's personal inquiries persisted. In fact, McDaniel offered to introduce Plaintiff to a friend of his, and Plaintiff declined. In response, McDaniel asked several personal questions related to whom Plaintiff was dating and whether the individual was one of Defendant's vendors.

15. On another occasion, Plaintiff reported to McDaniel that an offensive cartoon depicting a brown cow with a human woman's body standing in a provocative position was printed to the Collections Department shared printer. Thereafter, McDaniel told Plaintiff that the IT Department printed such email and that they did not mean anything by it. Plaintiff asked what, if anything, Defendant would do to address this kind of offensive behavior. McDaniel stated that IT was told not to print in the Collections Department and offered no other resolution.

16. In or around 2014, Plaintiff reported to McDaniel that she had written up Collector Bob Berryhill (a White male) for making offensive racial statements to credit union members. Specifically, Berryhill was telling members that President Barack Obama's brother lived in a hut in Africa and was talking negatively about Iranians. Despite Plaintiff's discipline, Berryhill continued to talk openly and negatively about other races to members. Therefore, Plaintiff told McDaniel about Berryhill's conduct, saying she was concerned other minority employees would be highly offended by Berryhill's comments. Regardless, McDaniel did nothing to resolve Plaintiff's concerns.

5

17.     Moreover, male employees in McDaniel's department were permitted to commit serious unethical banking/credit union practices without discipline. And, other long-term female employees were passed over for promotions in favor of male employees.

18.     In or around July 2015, approximately two (2) weeks before Plaintiff's termination, Plaintiff told McDaniel of her observations of gender and age discrimination in the workplace. Particularly, Plaintiff and McDaniel were discussing debt charge-offs performed by the bank. McDaniel was preparing a response to the National Credit Union Association ("NCUA") auditors explaining the large amount of debt charge-offs (i.e., debts the credit union could not recover) for which Defendant was cited. During their discussion, Plaintiff told McDaniel that whenever this situation occurred Defendant had to respond to an NCUA inquiry such as this, a female employee over forty (40) was blamed for the issue (i.e., used as a scapegoat) and subsequently fired. McDaniel did not dispute that this occurred.

19.     Further, Plaintiff's termination was motivated by her opposition to and reporting of unethical banking/credit union practices. Such practices included, but were not limited to, charging hidden fees without notifying members, not properly verifying customers' identity before issuing loans or opening accounts, allowing individuals in significant debt to Defendant to have additional loans, repossessing vehicles in violation of Oklahoma law and 11 U.S. § 362 (which prohibits collection efforts following a bankruptcy filing), or repossessing vehicles for non-payment when the member had, in fact, paid their

bill.

20.  Over the course of her employment, Plaintiff told NCUA auditors about her concerns with Defendant's unethical and illegal practices. Plaintiff further shared her concerns with McDaniel. For instance, an auditor asked Plaintiff in or around July 2015 to explain Defendant's process for ensuring the collections department was aware of member's bankruptcy filings. Against Plaintiff's advice, McDaniel had made significant changes to this procedure, resulting in the collections department being unaware of a member's bankruptcy filing (which would prevent the lawful collection of debt owed to Defendant). Plaintiff told the auditor and McDaniel her concerns about this procedure. Upon information and belief, Defendant unlawfully collected on member debts as a result of the procedure put in place by McDaniel.

21.  Following her unlawful termination, Plaintiff was replaced by a significantly younger male with limited experience in Collections.

22.  As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I - Race

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

23.  The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981, in the nature of race-based discrimination,

harassment, hostile work environment, and retaliation.

24. Plaintiff is entitled to relief under federal law for race discrimination because, as stated herein, Plaintiff is Black; she was qualified for her job; she was terminated from her employment with Defendant; and her job was not eliminated.

25. Moreover, Plaintiff is entitled to relief under federal law for racial harassment, as looking at the totality of the circumstances, Plaintiff was subject to harassment which was pervasive or severe enough to alter the terms, conditions or privileges of her employment, and the harassment was racial or stemmed from racial animus.

26. Plaintiff is also entitled to relief under federal law for retaliation because Plaintiff engaged in protected opposition to race discrimination; she suffered an adverse action subsequent to the protected activity; and a causal link exists between the protected activity and the adverse action.

27. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages.

28. Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## **COUNT II - Gender**

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

29. The matters alleged above constitute violations of Title VII of the Civil Rights

Act of 1964 in the nature of gender discrimination, hostile work environment and retaliation.

30. Plaintiff is entitled to relief under Title VII for gender discrimination because, Plaintiff is female; she was qualified for her job; she was terminated; and her job was not eliminated.

31. Further, Plaintiff is entitled to relief under Title VII for retaliation because Plaintiff engaged in protected opposition to gender discrimination; she suffered an adverse action subsequent to the protected activity; and a causal link exists between the protected activity and the adverse action.

32. Moreover, Plaintiff is entitled to relief under Title VII for gender-based harassment, as looking at the totality of the circumstances, Plaintiff was subject to harassment which was pervasive or severe enough to alter the terms, conditions or privileges of her employment, and the harassment was gender based or stemmed from gender based animus.

33. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages.

34. Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### COUNT III - Age

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

35. The matters alleged above constitute violations of the ADEA in the form of age discrimination and retaliation.

36. Plaintiff is entitled to relief under the ADEA because, at all relevant times to this action, Plaintiff was over the age of forty (40); she was qualified for her job; she was terminated and her position was not eliminated.

37. Further, Plaintiff is entitled to relief for retaliation because Plaintiff engaged in protected opposition to age discrimination; she suffered an adverse action subsequent to the protected activity; and a causal link exists between the protected activity and the adverse action.

38. As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991. Plaintiff is also entitled to liquidated damages based upon Defendant's willful conduct in violating the ADEA.

## COUNT IV - Equal Pay Act

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

39. The acts above-described constitute a violation of the Equal Pay Act which prohibits wage disparity based on gender and retaliation for Plaintiff's complaint of the same.

40. More particularly, Plaintiff is entitled to relief because she was performing work which was substantially equal to that of the male employees considering the skills,

duties, supervision, effort and responsibilities of the jobs, the conditions where the work was performed was basically the same, and the male employees were paid more under such circumstances.

41. Further, Plaintiff lodged a complaint regarding pay disparity based on gender, she suffered an adverse action subsequent to the protected activity; and a causal link exists between the protected activity and the adverse action.

42. As the direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages and is entitled to her lost income, past and future, and such remedies as the law may allow including remedies for the willful nature of the discrimination.

43. Plaintiff is also entitled to liquidated damages based upon Defendant's willful conduct in violating the EPA.

### COUNT V - *Burk* Tort

For her fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

44. The acts above-described also constitute a violation of Oklahoma's public policy which prohibits wrongful termination and retaliation against a whistle-blower for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would

condemn.

45. Particularly, Plaintiff performed an act which public policy encouraged when she opposed Defendant's unethical and illegal practices which were contrary to the purpose embodied in the Oklahoma Statutes Title 6, Chapter 2, *et. seq.* Such statutes govern the operation of Credit Unions which are defined as "a cooperative nonprofit society incorporated for the purpose of promoting thrift among its members, and creating a source of credit for them at legitimate rates of interest for provident or productive purposes."

46. Plaintiff's complaints and opposition to certain practices of Defendant, including but not limited to unlawfully seeking collections from members and jeopardizing member funds by issuing unsafe loans, *inter alia*, are consistent with Oklahoma public policy as shown above.

47. In retaliation for Plaintiff's complaints and opposition, Defendant terminated Plaintiff.

48. As damages, Plaintiff has suffered lost earnings, past and future, and other compensatory damages.

49. Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, liquidated damages, and punitive

damages together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 27th DAY OF JULY, 2016.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
LAUREN W. JOHNSTON, OBA #22341
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800     (telephone)
(405) 239-3801     (facsimile)
leonardjb@leonardlaw.net
johnstonlw@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED
